Another excessive force case. Yes, sir. Morning. Um, the law is well settled that in qualified immunity cases in which individual officers plead qualified immunity, the burden shifts to the plaintiff to rebut that pleading. The issue, though, is what does the defendant officer have to plead or do in order to properly raise qualified immunity before the rebuttal kicks in? The way that issue was raised in this case is for whatever odd reason, the officers filed their motion for summary judgment and never included any affidavits, never included any deposition testimony. What the officers did is they filed a hodgepodge of medical records, reports, investigations, and disciplinary proceedings in support of their motion without an appendix as required by the northern rules of Texas. The plaintiff objected to that and said, Your Honor, this appendix is impossible, non-appendix, is impossible for us to figure out exactly what these officers were relying upon, and it amounts to no evidence. The Court agreed with that in its order. He said the local rules of this Court are not idle requirements, and failure to follow them may result in pleadings or evidence being stricken from the summary judgment record. He quotes, cites Graham v. Dallas Independent School District, which defendant's appendix, and he puts that in quotation marks, fails to comply with local rule 56.6 and plaintiff's objection to the error is proper. The problem is, the problem for the plaintiff, is that the Court goes on to say but, the preposition plaintiffs always hate, and that is, but, we don't, the officer doesn't have to do anything. All the officer has to do is simply plead qualified immunity. Well, now, is this a dismissal on the pleadings or on summary judgment? Summary judgment. So you had the burden to create a fact issue. Yes. How did you do that? Well, if you will read in the brief, we have outlined significant fact issues, and that's another point of error that we've raised, is that the Court ignored the Supreme Court's dictates in the Tolan v. Jeffrey Wayne Cotton case that came out of this Court, and said, you have, these are fact-intensive cases. You can't simply write conclusions in your opinions if the plaintiff's claim is . . . Well, what is, what is the gravamen of your complaint against the jailers? What is the gravamen of the complaint? Yeah, in other words, what did they do wrong? Well, we outlined in about 20 pages in the brief . . . Did you depose any of them? No, we did not. He gave us 40 days from the time he ordered a briefing or a motion, the State to make a motion on their summary judgment on qualified immunity. There was very little discovery done. Bottom line is, most of the officers, if not all of them, were disciplined for failure to do their job. That's the gravamen of the complaint. In connection with your client's . . . I'm sorry? Were they disciplined because of what happened to your client, or because of something else? They were disciplined because of what they did not do, which caused the . . . In regard to your client. The death of the client's son. Right. Well, okay. Now, I have a couple of questions. What was he incarcerated for? He was in custody. Well, he wasn't in custody. He was a convicted . . . This is an Eighth Amendment claim. I believe it was aggravated robbery. He was schizophrenic, and he was in a cell that was required to be watched every five minutes. Rounds have to be made because when you're in a single cell by yourself, as the court's aware, you can harm yourself and no one is going to yell for a jailer, or you can get sick and no one's going to call for a jailer. Well, right. Now, this isn't the . . . No, this is not the one. There was something like that in Harris County. My other question is, I am shocked, or I am wondering how a person could have a twisted bowel and not ever be in pain, or not ever . . . It's peritonitis is probably what he had, although the autopsy report indicates dehydration. There is evidence from the hodgepodge of documents I did receive, or the plaintiff received in the motion, that his water had been cut off. Well, you said . . . I mean, we were told, I thought it was a twisted bowel leading to sepsis, which would be consistent with peritonitis, it seems to me. And that would probably mean that it perforated, got into the body, and an autopsy would have said something about . . . I don't believe it was perforated. I would have to go back and look at the autopsy. It had gone green, but it was extremely painful, yes. Well, yes, and if it was painful, you know, how could staff not be aware of that? Well, they lied on their round logs, and that was one of the findings on several of them. The supervisor also, who was dismissed because apparently he was not personally involved, although the record shows that he was, and we pled that he was. But to answer your question, that's conscious indifference by definition. And the problem I have with the Court's order is that he doesn't go in and take the factual facts that we pled and the facts that are in the record as to each officer and outline why, taking all the evidence in favor of the plaintiff, this was not conscious indifference and they weren't subjectively aware of what was going on with this man. Well, of course, pleading, I mean, unless they pled themselves into fact issues, I mean, unless their evidence raised fact issues, pleading, of course, is not fact issues. Pleadings are not evidence. Right. Yeah. He says . . . Where do your fact issues come from? Where are the facts? Fact issues come from, and they're cited in the brief, they come from the documents that were provided to us. After many, many hours, we organized them and put them into a form that we could figure out what was going on, and we did cite them in the record. And if I could, I will refer you to the order of the Court, page 544 of the record, and he says . . . Examining the allegations and evidence against each defendant separately, as required, which he doesn't do, there is no evidence that either Compos Pettis, Coleman, Cochran, or Crear at any time possessed active subjective knowledge of Thompson's medical condition or that any of them did anything to consciously disregard this condition. That's a conclusion. And the Supreme Court says, in qualified immunity cases that are outcome determinative, that stop the case right there, and qualified immunity is judge-made. There's nothing in 1983 that provides that defense. And so, if it's going to be a fair and equal system, then the Supreme Court says, you've got as a court to at least outline all of the facts taken in most favorably to the plaintiff, the nonmoving party, and show why there was no conscious indifference. Is the autopsy record in the autopsy report in the record? It is, Your Honor. So what are the subsidiary facts that show that some of these officers had actual knowledge of the condition? On January 25th of 2014, and this is page 13 of my brief, the date Thompson died, Compos was accused of signing Thompson's close observation sheet without checking on Thompson. He admitted he was one of the officers assigned to Thompson's row, but another officer did the row check. He stated that he noticed the officer who did the row check had not signed the close observation sheet, so he signed for another officer, claiming that he had done it. He falsely documented Thompson was standing at his cell door. This man died at noon, according to the autopsy. And this is at 3.30. And he's documenting falsely in his log that Mr. Thompson is alive and standing up. And he was fed a meal when he wasn't fed a meal. These are intentional misrepresentations. That's the argument in the brief. And I go on with each one, Justice Davis, with each officer. You're saying they misstated that he ate breakfast? They misstated that he ate a meal. My understanding was that they . . . I mean, the way I read your brief, supposedly they brought him a breakfast tray, he ate breakfast, and then the next time they brought him the Well, they documented that they brought it to him and he was eating. And he had been dead since noon. You're talking about the afternoon meal? Yes, the afternoon meal. They feed early in the prison system, as you know, about 3.30 is when they feed, because they get them up at 5 o'clock. And as far as . . . anyway, my brief goes on very specifically, and I did that on purpose because that's what the law requires you to do. You didn't move under 56F or whatever the current rule is for further discovery? Rule 56, summary judgment rule. Right. But, I mean, you didn't move to take any depositions? You just thought this would be . . . It's impossible for lawyers to schedule with their schedules. And the Attorney General works out of Austin. I'm in Lubbock where one of our Court of Appeals Justices is from Lubbock. Anyway, it's difficult in 40 days, the short time span. I guess I could have made a motion for more time. Judge Cummings, generally, he's been on the bench since 1986. I know him well. He generally doesn't grant that on qualified immunity. But I guess I could answer your question. I did not take any depositions. Well, let me ask you two things. First is, do you agree, and correct me if I'm wrong, that these individual defendants must have known of and disregarded an excessive risk to that prisoner's health? Is that basically what we're looking at? He was extremely . . . No, I'm asking you. Is that basically what we're looking . . . Yes. Is that the right standard? Okay. Now, we know what happened, to the extent the autopsy evidence is in the record. What is it . . . I mean, they didn't know that he had a twisted bowel. They didn't know necessarily that he was writhing in pain, as some evidence might have shown from an expert. If that's what his problem was, he would have been writhing in pain. They weren't checking on him. What is the excessive risk to his health that they knew about? What they knew about is he's schizophrenic. He had lost weight. He's under doctor's orders for a high-calorie meal. And they also knew that he was in a single cell by himself for a reason. He would put his clothing into the toilet because he thought demons . . . But that imposes death, so it still has to be a causal relation between what they knew and the harm that occurred to him. So what did they know about him that could have, if they had responded more appropriately, would have avoided this? Well, that he wasn't living, and they documented that he was. Well, it's too late to help him. I'm sorry? It would have been too late to help him if that's all they missed. Well, no. They could have had emergency surgery that just checked on him and realized he wasn't moving. I mean, he didn't die. Well, he said living. He probably had that twisted gangrenous bowel for three or four days. I mean, that can't happen. I'm sorry? That cannot happen in a couple hours. Exactly. And their duty was to check on him, figure out why. And can you imagine, he couldn't have been moving around a whole lot. Well, is there evidence in this record that would support what you're saying? It seems to me that if there is not something we find in our general knowledge of this kind of condition, and mine is minimal, this should have been observable to someone based on what we find. Is there any doctor's report in here as to what somebody with that condition would have looked like three hours before he died, six hours before he died? It's not. He died at noon, and all of this shift came on later after, I think, the noon meal. Was he receiving psychotropic drugs? I'm sorry? Was he receiving psychotropic drugs? Yes, he was. Yes, he was. How close were other inmates? I know he's in a cell by himself. He's in a cell by himself, but it's a cell block, and they're supposed to walk, and they're fairly close. We don't have any evidence from other prisoners. Not in the record that I saw. And again, there's no discovery been done on the case. Thank you. Well, you have rebuttal opportunity. All right. Sorry. You're Mr. Pope. May it please the Court? The Fifth Circuit should affirm the ruling of the District Court because Appellant Ms. Thompson has failed to provide evidence in order to overcome the appellee's right to qualified immunity. In this case, the officers properly asserted their right to qualified immunity, which then shifted the burden to Ms. Thompson to overcome through summary judgment evidence. In order to rebut or to overcome this entitlement or right to qualified immunity, she was required to present evidence that the officers knew of Mr. Thompson's intestinal issues and disregarded those, and she has failed to present evidence of the subjective awareness of the officers. Weren't they under some obligation to check him out in his cell every few, you know, periodically? Yes, they were, Your Honor. They were supposed to check on him because he's in close observation every 15 minutes. And the record before this Court, we cannot deny that they did not check on him every 15 minutes, which really supports our conclusion and our theory that in order to be subjectively aware or to be liable under the deliberate indifference standard, these officers had to have checked on him. They had to have seen that he was in distress, concluded that he was in distress. Now, that is the strangest excuse for qualified immunity I have ever heard. They didn't do their job. Therefore, they were not deliberately indifferent. There must be a better argument than that. Your Honor, unfortunately, that is the argument, because in order to be deliberately indifferent, they have to check on him. There has to be some form of... Well, I mean, I only know a little bit about this from a family experience. But when you have a twisted bowel and you end up with gangrene in your belly, those are both very, very painful things. So, they don't know. You can't expect them to be gastroenterologists, but you can expect them to have perhaps heard down the cell block that somebody was calling out in pain. That is true. If there was evidence that he was writhing in pain. If there was evidence that Ms. Thompson presented that... Well, we don't know, because all you've got is a bunch of lying jailers. How do we know he didn't yell in pain? If they're all lying about, you know, they're off playing cards in the break room all day. Now, let me ask you this. Couldn't a jury draw some inferences from the false representations they made in their report? Make the inferences of what? That they were deliberately different, or they were... Yeah, that they knew something about this, because they were trying to dummy up some reports. I think some of the best evidence is the contributing evidence that we supplied. And there's actually evidence within Ms. Thompson's evidence, which is a death summary. And it's a death summary from Dr. Williams, which indicates that Mr. Thompson didn't make a bunch of complaints. He never submitted any significant issues to the administration. And on the day that he was seen... Excuse me, the day that he died, on the 25th, he was seen by medical at least twice. And each person, or each medical person, indicated that he was in no apparent distress. So I think that helps establish the fact that his condition wasn't, in fact, obvious at the time that he died. He was seen that morning by medical professionals. For what purpose? I think it was part of his daily rounds, checking on him, seeing that he was okay, potentially giving him medication. Was that person disciplined? No. Because there's no evidence that at that time that Mr. Thompson was displaying any sort of pain. Each nurse or each person indicated no apparent distress. What was the time of the last visit by a medical person? It was 8 o'clock in the morning, around 7.45, 8 o'clock in the morning, before they did the lunch meal, which was at 9. And that report's not challenged? I mean, there were falsifications of records. But is it basically accepted that someone did see him at the time you just said? That is correct, Your Honor. And was that just looking through the cell door and no apparent distress? Is that the extent of what happened? They actually go and they conduct checks. They go inside the cell. And was that shown that that's what happened at 8 o'clock that morning? Or is that just what's supposed to happen? No, they had shown that that is what happened. And that is a part of the record that the plaintiff provided for the court. That is within the death summary. It shows that at that morning he was seen twice. The day before he died, he was seen by medical professionals also. His customary behavior that he displayed in his cell was sitting at the end of his bunk, just kind of sitting there. And we provided controversial evidence that shows that other officers who weren't defendants in this case indicated the same type of behavior that Mr. Thompson displayed on the day that he died. That he was sitting at the end of his cell. And the evidence that, the emphasis of the argument is what did the plaintiff or what did Ms. Thompson present as part of evidence that the officers were subjectively aware? She presented disciplinaries. And those disciplinaries standing alone cannot qualify or establish a call, excuse me, a constitutional violation. What exactly was the discipline for? Also find the road check sheets. They're supposed to check on the officers every 15 minutes. They did not. They were checking on them every 30 to 45 minutes, sometimes 15 minutes. The issue with the last meal is Officer Perez, when he died, went down to the row and checked that he had received and eaten his meal. But we know that that's not correct because he was actually dead in his cell at that time. So all these officers were disciplined. Some were fired. And there was an independent criminal investigation initiated by the offices of the Inspector General. To solely rely on these documents, these disciplinaries as the formation of subjective awareness is improper because the law is well established within the Fifth Circuit that those disciplinaries standing alone cannot establish deliberate indifference or a constitutional violation. The burden is on Ms. Thompson to develop, excuse me, is required to show the subjective awareness of these officers. What about Mr. Dunn's observation that when Judge Cummings gave 40 days to put their evidence in, that that really wasn't enough time, given the distances involved between Austin and Lubbock and wherever the prison was? I would argue that he should have shown or attempted to engage in discovery. He knows that his burden. The court made very clear that this was an issue of qualified immunity. He knew very clearly that he had the burden to prove his case. There's actually an extension of time that we requested, which was an additional 30 days. So now we're saying within 75 days, depositions couldn't be taken, interrogations couldn't be taken. And that's not a failure on our part. I'm sorry, that was a failure on the appellants not to pursue discovery. And what's before the court is the record that shows that these officers were not subjectively aware and disregarded the substantial risk of harm to Ms. Thompson. Had the weight loss occurred over a precipitous length, a very short period or a longer period? No, a longer period. Okay, that's sort of what I thought. And he makes these conclusions that these officers knew that he was schizophrenic, which is likely because he was in close observation and those individuals do have psychiatric issues. But pursuant to HIPAA, these officers don't know the exact details of Mr. Thompson's ailments or his psychiatric issues. And I think the point that Your Honor Southwick made that he died from intestinal obstruction. He didn't die as a result of any psychiatric issues. There's no evidence that he was in pain, that he was writhing in pain or that he called out or that these officers were subjectively aware. Well, I'm just sort of wondering if psychotropic medicine has the same impact that like a codeine drug would, which is to sort of dull your senses and make you maybe less aware of the pain. But I just can't believe there was no pain, that it wasn't really, really painful. Your Honor, there's no evidence of it in the record. So I'm unsure of that conclusion of how much pain Mr. Thompson was in. The fact that these officers did not, their failure to alleviate a risk that they should have, which they should have. They should have been conducting their cell searches every 15 minutes, but they did not, under DOMINO establishes that deliberate indifference cannot attach. And when we start to frame our arguments on what these officers should have done, they should have gone and seen him, they should have known that he was in pain, that they should have known that his bowel was obstructed, that's a negligence standard or that's a standard that is by DOMINO not sufficient enough to attach deliberate indifference liability. And so given these arguments, given the fact that the appellant has failed to establish law, excuse me, evidence of the subjective awareness, the mens rea of all these officers, that she has failed to satisfy her burden to overcome their right to qualify to meet. I mean, one, yeah, okay. One reason, I assume this cell block had a bunch of psychiatrically ill patients. Is that correct? Yes, Your Honor. And of course, one reason you're supposed to do the 15-minute cell check is so they won't kill themselves, right? I imagine that is part of the reason why. So, you know, I mean, you could almost say that when you're dealing with prisoners who are so ill that they have to be individually selled and that they're doing the kind of behavior that this fellow engaged in, I mean, it's pretty much almost deliberately indifferent not to do your job under those circumstances. It's more than that, but I'm not... I'm very hesitant to apply liability to officers in certain conditions, but goodness knows, it cannot be a defense that you're not doing your job and therefore you can't be deliberately indifferent because you didn't know what happened. I believe the standard is, what did these officers know? Well, that's a problem. Right, but... And I agree that that is a bad fact of this case. These officers didn't do their job properly, but the liability cannot attach... No matter how ugly that fact is, unless they were subjectively aware. Well, not knowing... You can be deliberately indifferent if you know there's an excessive risk to this fellow's health, life, if they don't do something. But the risks that played out here don't necessarily correlate to the risks that they did know about, which is his psychiatric problems. So if he had banged his head against the cell and killed himself that way, what about that? Would their failure to check on him every 15 minutes, as he should have, would that have been deliberate indifference to a known risk? I would argue that liability potentially would attach... So the problem here is that they did not know of the particular problem that he had? That is correct, Your Honor. That killed him, I mean? That is correct. There's no evidence that the officers knew of his intestinal issues. There's no evidence that he ever complained about his intestinal issues before that he died. And I would agree that liability may attach if he had committed suicide, if he hung himself, if he banged his head against the wall too hard, because those officers should have known of his psychiatric issues that they should have been checking on him. But that's not the case here. The case is that he died from intestinal blockage and that he didn't die as a... There's no causal connection between the reason why he was in his jail and the reason why he died or the cause of death. You said the Attorney General did an investigation afterwards? The Office of Inspector General, Your Honor. All right. Did they develop anything from the prisoners in the cell block as to him crying out or anything of that nature? I know, Your Honor, not within the record. And the officers in this case were disciplined. They were put on probation. One officer was actually fired as a result of this, but no criminal charges that I know of were levied against any of the officers. Was a report filed from that investigation? Yes, Your Honor. And that's been furnished to opposing counsel? Has that been furnished to opposing counsel? Yes, it has, Your Honor. And I know the argument, as Your Honor Jones has indicated, is ugly. But in order to establish deliberate indifference, there has to be some sort of acknowledgement that these officers were aware and that even though they didn't check on him every 15 minutes, he did not die from a psychiatric issue. He died from an intestinal blockage, a blockage that none of the officers knew about or there's no evidence that they should have known about that blockage. And because she has failed to present evidence of their awareness or their subjective knowledge, she has not overcome the officer's right to qualify to meet him. I take it they did not sue the medical personnel. No, they did not, Your Honor. Well, I don't think we have any more questions. Okay. If the Court does have any more questions, I'll cede my time. I don't think so. Thank you, Your Honor. All right. Thank you. Just briefly on the rebuttal, I wanted to talk about something in the Court's opinion that was very troubling to civil rights attorneys and that is the construction of what you have to raise as a defendant in order to properly shift the burden of proof. The Bazin v. Hidalgo County case, a 2001 case out of this circuit, is the law. And what it says is that you have to show, in order to shift the burden to the plaintiff on qualified immunity, you have to show, it's a very low bar, you have to show that you acted in good faith and you were in your discretionary capacity as an officer. That's it. Well, unfortunately, the lines of cases that have come down since then have been basically, and there's the Brown v. Callahan case, 623 Federal 3rd, 249, and it basically says, once an official pleads this defense, the burden shifts to the plaintiff. And it cites Malachek v. Herman. Well, that's not what Malachek says. Malachek says an officer need only plead his good faith and it cites Bazin v. Hidalgo County. The other case that the Court relied upon other than Brown was Collier v. Montgomery. And in that case, the Collier case says, the plaintiff has the burden to negate the assertion of qualified immunity once properly raised. And the footnote cites to Brumfield v. Hollins, 551 Federal 3rd, 322, 2008 case. Brumfield says, and they get it right, he basically quotes Bazin v. ... I mean, I'm sorry. He basically quotes Bazin v. Hidalgo County. The defendant official must initially plead good faith and establish that he was acting within the scope of his discretionary authority. So if nothing else comes out of the case, I hope that you will clarify what the defendant has to do. It's because the trial court picks up on Brown and Collier and just says, you just have to put a one-sentence motion for summary judgment. We plead qualified immunity. That's not what Brown stands for. I think that was a throwaway line that's dicta that wasn't... And Justice Jones wrote the opinion because she knows what she meant by that. Bazin is the law, and that should be reinforced. You have to do more than simply have a one-sentence motion and say, we plead qualified immunity. And that's what the trial court said. That's all I have. Okay. Thank you, sir. The court will stand in recess for about 10 minutes.